IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

FEBRUARY TERM, 1904.

---

IN THE MATTER OF THE PETITION OF MARK·M. FAGAN,
MAYOR OF JERSEY CITY.

Argued February 17, 1903—Decided March 18, 1904.

The supplement of 1894 to the act creating boards of street and water commissioners in cities of the first class in this state, passed in 1891, is a special, and not a general law, for the reason that its provisions apply only to those cities which were in the designated class at the time of its passage. It is, therefore, unconstitutional and void.

---

Proceedings to settle title· to office under sections 25 and 26 of an act entitled "An act concerning cities of the .first class in this state, and constituting municipal boards of street and water commissioners therein, and defining the powers and duties of such municipal boards, and relating to the municipal affairs and departments of such cities, placed under the control and management of such boards, and providing for the maintenance of the same," approved March 28th, 1891. *Gen. Stat., p.* 465.

Before GUMMERE, CHIEF JUSTICE, and Justices HEN-
DRICKSON and PITNEY.

For the contestants, *George L. Record* and *Charles L.
Corbin.*

For the incumbents, *Allan L. McDermott.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This is a contest over the title
of rival claimants to office as members of the board of street
and water commissioners of the city of Jersey City. By
the provisions of the act creating such board, approved March
28th, 1891, the regulation and control of the streets and
water-supply in cities of the first class (that is, cities having
a population of one hundred thousand or more) was placed
in the hands of a board created by the act. This statute
applied not only to cities which were then in the class desig-
nated, but to all those which should thereafter come into the
class. It was therefore under our decisions a general law and,
so, constitutional, although it regulated the internal affairs
of cities.

By the provision of the first section of the act, power was
conferred upon the mayor to appoint the members of the
board.

In 1894, however, the legislature passed a supplement to
this act, by the terms of which the power to appoint members
of the board was taken from the mayor and the office of street
and water commissioner was made elective. *Gen. Stat., p.*
478.

The first section of the supplement enacted that the term
of office of the members of every board theretofore appointed
under the provisions of the act of 1891, should end and be
determined immediately upon the passage of the supplement.

Section 2 enacted that within five days from the passage of
the supplement the mayor of each city of the first class should
appoint five persons who should immediately upon their ap-
pointment and qualification constitute the board of street and

water commissioners until the first Monday in May, 1895, and until their successors should have been elected, as provided in a later section of the supplement, and should have qualified.

Section 3 enacted that the boards of street and water commissioners, as constituted under section 2, should be substituted for such boards as were then constituted and should be vested with all the authority, powers and rights of such boards.

Section 4 is as follows: "That at the next municipal or charter election to be held in each city of the first class, there shall be elected five members of the board of street and water commissioners for said city, two of whom shall be elected for the term of one year, two for the term of two years, and one for the term of three years, and that, at each municipal or charter election thereafter, there shall be elected a member or members of the board of street and water commissioners to succeed the member or members whose term then expires for the term of three years."

By section 5 it was enacted: "That upon the ballots to be used at the municipal or charter election, to be held in such cities in the year 1895, the designation of the office to be filled shall be as follows: 'For members of board of street and water commissioners for term of one year; for members of board of street and water commissioners for term of two years; for member of board of street and water commissioners for the term of three years;' and that at each municipal or charter election thereafter the designation of the office to be filled shall be as follows: 'For member of board of street and water commissioners,' or, 'For members of board of street and water commissioners.'"

The incumbents were elected under the supplement of 1894. The claimants were appointed by the mayor of Jersey City under the provision of the original act upon the ground that the supplement of 1894 is unconstitutional, because it is a special law.

The sole point presented for decision is whether the pro-

visions of this supplement are limited to cities which were in the designated class at the time of its passage or whether they also embrace all cities which could thereafter come into the class.

Much stress is laid by counsel of both sides upon the language used in sections 4 and 5 of the supplement as determining the scope which the act by its true construction has. The contention on the part of the incumbents is that, in construing these provisions, the court is controlled by the decision of the Court of Errors and Appeals in the case of *Ross* v. *Essex County Park Commissioners,* 40 *Vroom* 291.

In that case the legislature, having provided a comprehensive scheme for the laying out and maintaining of public parks in counties of the first class, provided that the act should not take effect in any county of the class until the question of its acceptance or rejection should be submitted to the popular vote of the citizens of the county, and that such submission should be made "at the next election, whether general, municipal or special, wherein the people of all the county, qualified to vote, are authorized to vote for local officers," and then proceeded to point out the method by which this question should be submitted to the voters of the respective counties by directing the county clerk, at least ten days before *any* such election, to give public notice by publication in certain newspapers that such submission would be made at such ensuing election, and to provide ballots in sufficient quantities for the legal voters and to make distribution thereof, and to place upon such ballots either the words "For the new park bill," or the words "Against the new park bill."

The Court of Errors, from a consideration of the whole Park act, found that its *prime* purpose was to tender to the voters of every county having the required population the right of accepting the benefits thereby conferred; that it was in order to ensure this purpose that the statute imposed the duties specified upon the county clerk and pointed out the time for their performance; that the provision for submitting the matter to the people at "the next election" was directory in character and not an absolute limitation upon the right of

the people to accept the benefits conferred by the act; that this right could not be destroyed by the conduct of the local officers in refusing or neglecting to perform the duties imposed upon them at the time fixed by the statute, but would continue until such duties were actually performed.

These facts brought the court to the conclusion that, by the true construction of the act, the question of accepting or rejecting its benefits was to be submitted to the people of those counties which were then in the class at the election next ensuing after the passage of the act, and to the people of those counties which should thereafter come into the class at the election which should ensue next after the happening of that event.

The principle underlying the disposition in the Park Commissioners' case, as it seems to us, is that, in ascertaining the scope of an act of the legislature regulating the internal affairs of a municipality, the fact that the steps provided for carrying into effect the legislative scheme are directed to be taken "at the next election," is not of itself decisive of the legislative intent that the provisions of the act should only be applicable to such municipalities as should be in the class at the election held next after the passage of the act; and that, when a consideration of the whole of the act, except the provisions which designate the method of putting it into operation, leads to the conclusion that the statute was not intended to be so limited, such provisions do not justify a different conclusion.

In the present case, however, the body of the supplement, exclusive of sections 4 and 5, does not justify the conclusion that the great purpose of the act was to provide a change in the method of selecting members of the board of street and water commissioners, both in cities then in the first class and in cities which should thereafter come into that class. On the contrary, the prime object which appears in those portions of the statute which precede sections 4 and 5, is the immediate ousting from office of the various members of the board of street and water commissioners in those cities which were in the class specified at the time of the passage of the

act, namely, Jersey City and Newark, and to fill those offices with other incumbents.

Section 4, instead of plainly enlarging this object, on its face has the same limited scope. Although containing words similar to those construed in the Park Commissioners' case, it provides a means for carrying into effect statutory provisions which are not general but limited in their scope. No reason therefore appears for giving those words a construction different from, or more broad than, their ordinary meaning. And even if the true meaning of the provision contained in that section, when considered in connection with what precedes it, is left in doubt, a reference to the language used in section 5 clears up that doubt. In that section the election referred to is expressly declared to be that to be held in the year 1895, and the ballots to be cast at that particular election are the only ones which, by their form, are adopted to the filling up of the whole board with members having varying terms of office.

The subsequent sections of the act suggest no different idea from that expressed by those which have already been referred to.

Section 6 prescribes that the members of the board, appointed pursuant to the provisions of section 2, shall organize immediately upon their appointment and qualification, and that in each succeeding year said board shall organize on the first Monday in May.

Section 7 authorizes the mayor of each city of the first class to remove the members of the board for cause and after a hearing.

Section 8 confers upon the mayor the power of appointment to fill a vacancy.

The provisions of the supplement of 1894, being limited to those cities which were in the first class at the time of the passage of the act, and not being applicable to those cities which might thereafter come into the class, must be declared to be unconstitutional under the rule laid down by the Court of Errors in the case of *De Hart* v. *Atlantic City*, 34 *Vroom* 223.

We have not overlooked the contention that the statute of 1891, and its supplements of 1894, are, in contemplation of law, but one enactment, and that, as the twenty-fourth section of the original act provides that the unconstitutionality of one or more of its sections shall not invalidate the whole act, but that such sections shall be rejected and the rest of the act permitted to stand, it is the duty of the court to reject only such sections of the supplement of 1894 as are unconstitutional and give effect to the remainder of its provisions. The soundness of the abstract proposition contained in this contention may be admitted. The difficulty with the incumbents' case is that it has no application to the statute under consideration. The vice of the supplement of 1894 is not confined to any particular section or sections. It inheres in the act as a whole. To expunge from it those provisions which limit its scope and thus make it applicable to municipalities which were not intended to be included in the legislative scheme would be an act of legislation, not of judicial interpretation.

The result is that the method of filling the office of member of the board of street and water commissioners in the city of Jersey City is that provided by the original act of 1891, and the appointees of the mayor are, each of them, entitled to hold the office to which they were respectively appointed.